IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ACADEMY CORPORATION, a New Mexico
corporation,

        Plaintiff,

v.                                                     Civ. No. 04-0008 JH/DJS

TARGET TECHNOLOGY COMPANY L.L.C.,
a California limited liability company,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on two motions: *Defendant's Motions to Dismiss for Want of Personal or Subject Matter Jurisdiction, and Defendant's Alternative Motion to Strike Offensive Language from Plaintiff's Complaint* [Doc. No. 7], and Plaintiff's *Motion Under Rule 15(d) to Supplement Complaint* [Doc. No. 15]. After a careful review of the law, the pleadings, and the arguments set forth by the parties, the Court concludes that the motion to dismiss for lack of subject matter and personal jurisdiction should be denied. The motion to strike offensive language from the plaintiff's complaint will be granted, but plaintiff will be granted leave to amend its complaint in accordance with this ruling. Finally, plaintiff's motion under Rule 15(d) to supplement its complaint will be granted.

## BACKGROUND

Han Nee is President of Defendant Target Technology Company L.L.C. ("Target"), which owns U.S. Patent Nos. 6,007,889, 6,280,811, 6,451,402, and 6,544,616. Declaration of Han Nee at ¶¶ 1, 16. Target also recently obtained a "related" patent, No. 6,790,503 ("the '503 patent"). Motion Under Rule 15(d) to Supplement Complaint, § B. Each of these patents pertains to an

invention by Mr. Nee and relates to the use of certain metal alloys that are used to make the semi-reflective layer in what is commonly referred to as a digital video disc, or DVD. *Id.* at ¶ 2. A DVD stores information that can be read or displayed by a computer. *Id.* The information is stored as binary code, the language used by computers, within microscopic pits on the reflective surface of the disc. *Id.* As the disc spins in a DVD player, a laser beam reflects off its surface and strikes a sensor, thereby transmitting the binary code embedded on the surface of the disc so that it may be translated into images on the screen. *Id.* at ¶ 5.

One of the advancements in DVD technology was the DVD-9. The DVD-9 uses two layers of reflective coating, one of which is partially reflective and partially transmissive. *Id.* at ¶ 6. This semi-reflective layer is created by placing the microscopic pits on a plastic layer, known as a substrate, and then applying a metal film in a process known as sputtering. *Id.* at ¶ 8. Sputtering is a process by which metal atoms are transferred to the disc from a sputtering target. *Id.* at ¶ 9. When first developed, manufacturers commonly used pure gold or pure silicon to create the semi-reflective layer. However, gold is expensive and silicon has technical shortcomings. *Id.* at ¶ 14. Mr. Nee's patents relate to silver alloys for use as sputtering targets that are, according to Mr. Nee, superior to gold or silicon. *Id.* at ¶ 15.

Target, a California limited liability corporation, owns the patents for Mr. Nee's inventions regarding the silver alloy sputtering targets. *Id.* at ¶ 15. Target's two main sources of revenue are the collection of royalties for patent licensees and the sale of sputtering targets manufactured by subcontractors. *Id.* Academy Corporation d/b/a Academy Precision Materials ("Academy") is a New Mexico corporation located in Albuquerque, New Mexico. Declaration of George M. Wityak in Support of Plaintiff's Opposition to Motion to Dismiss at ¶ 2. Academy has melting and fabricating

2

facilities and sells various products of metal composition. *Id.*

Sometime in 1998, Mr. Nee approached Academy at a trade show to inquire about Academy's capabilities in manufacturing sputtering targets. *Id.* at ¶ 5. Mr. Nee followed up with faxes to Academy indicating his desire to purchase several sputtering targets and discussing the possibility of a license agreement between Target and Academy. *See* Plaintiff's Opposition to Motion to Dismiss Exhibits A-C. The negotiations went on for several years, resulting in various communications between the two companies with a goal of reaching an agreement. *See* Plaintiff's Opposition to Motion to Dismiss Exhibits H-N. In 2001, Mr. Nee visited the Academy plant in Albuquerque with one of Target's customers. Wityak Declaration at ¶ 18.

Target claims that its relationship with Academy halted in 2001 when it discovered that Academy made targets under the name OPTI-SIL and sold them without Target's knowledge to Target's client, Maxwell Productions. Nee Decl. at ¶ 19; *see also* Wityak Decl. at ¶¶ 3, 11; Exhibit L. In 2001, Academy and Target reached an agreement with regarding to Academy's sale of targets to Maxwell Productions, but thereafter their negotiations regarding a licensing agreement broke down. Nee Decl. at ¶ 19; Wityak Decl. at ¶¶ 12-19.

In 2003, Academy was also in negotiations with another company called Technicolor for the sale of the OPTI-SIL targets. Wityak Decl. at ¶ 22; Exhibit O. In February of that same year, Target sent letters to both Maxwell Productions and Academy informing them that it holds silver alloy sputtering patents. Exhibits N & R. The letters contained the following warning:

> Academy Precision Materials is marketing a silver alloy target to manufacture optical discs. The unlicensed manufacture, sale, import or use of a product covered by our patents could subject Academy Precision Materials and its customers to liability for patent infringement.

3

> We request that you consider the enclosed patents regarding the products being sold or offered for sale by Academy Precision Materials.

Plaintiff's Opposition to Motion to Dismiss Exhibits N & R. In May of 2003, Technicolor informed Academy that it was reluctant to follow through with the purchases. Wityak Decl. at ¶ 22. In November, Academy representatives met with Technicolor employees and Deborah Peacock, Academy's advising attorney, to allay any fears that Academy was infringing Target's patents. *Id.* at ¶ 24. Technicolor declined to purchase targets from Academy in the absence of a license from Target. *Id.* at ¶ ¶ 25-26

On January 5, 2004, Academy filed its complaint for a declaratory judgment to declare Target's patents invalid or unenforceable. Target then counterclaimed for patent infringement. In July of 2004, Target filed its motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for lack of personal jurisdiction under Rule 12(b)(2), and alternatively to strike language from Academy's complaint. Shortly thereafter, Academy filed a motion to supplement the complaint. The Court will address the motions in turn.

## **LEGAL STANDARDS**

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take two forms. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (citing *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The moving party may either "facially attack the complaint's allegations as to the existence of subject matter jurisdiction,"*Maestas,* 351 F.3d at 1013, or "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Id.* In this case, Target has taken the latter approach.

When considering a motion to dismiss for a lack of subject matter jurisdiction under Rule 12(b)(1), the court accepts allegations in the complaint as true. *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995). The court also may consider evidence outside the pleadings, such as affidavits and other documentary evidence, in order to resolve disputed facts. *Id.*

The plaintiff bears the burden of proving personal jurisdiction over an out-of-state defendant. *Martin v. First Interstate Bank of California,* 914 F. Supp. 473, 475 (D.N.M. 1995)(Vasquez, J.). Under Rule 12(b)(2), the plaintiff must make only a prima facie showing that the court has personal jurisdiction over the defendant. *Behagen v. Amateur Basketball Ass'n of the U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (citing *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)). The court accepts the allegations in the complaint as true unless they are controverted by defendant's affidavits. *Id.* If the parties submit conflicting affidavits, the court resolves such disputes in favor of the plaintiff. *Id.*

## DISCUSSION

### I.    SUBJECT MATTER JURISDICTION

Jurisdiction under the Declaratory Judgment Act exists only where there is a "case or actual controversy." 28 U.S.C. § 2201(a)(2000). The case or controversy requirement in a declaratory action is the same as the case or controversy requirement under the Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).

In a patent case, as in other declaratory actions, such a case or controversy must exist at the time the lawsuit is filed. *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F. 2d 1388, 1398 (Fed. Cir. 1984) (citations omitted). Even if the court finds that there is an actual controversy, the court does not have to exercise its declaratory judgment jurisdiction, but rather retains discretion to decline to hear the

matter. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996)(citing *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

To determine if the actual controversy requirement is met in patent cases, the court applies a two-part test. *EMC,* 89 F.3d at 811; *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995); *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988); *Goodyear Tire & Rubber, Co, v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed. Cir. 1987). The first inquiry is whether the defendant's conduct created a "reasonable apprehension" that it would initiate a lawsuit against the plaintiff if the plaintiff continued its allegedly infringing activity. *Arrowhead*, 846 F.2d at 736. The second inquiry is whether the plaintiff has prepared or is capable of preparing the allegedly infringing device. *Id.* In this case, Target addressed only the first prong of the test, even though failure of either of the two required elements will demonstrate a lack of subject matter jurisdiction. *Phillips Plastics,* 57 F.3d at 1052. Neither party disputes the fact that Academy is preparing the allegedly infringing device or at a minimum has the capability to produce the device. Accordingly, for the purposes of this opinion, the Court assumes that the second prong is satisfied and focuses its analysis on whether Academy was under a "reasonable apprehension" that Target would commence litigation.

An express charge of infringement will be sufficient to create a reasonable apprehension that the patent holder will commence legal proceedings. *Arrowhead*, 846 F.2d at 736. However, rarely is there such an explicit charge. Accordingly, the courts do not require an express charge of infringement but rather will look to the defendant's conduct under the "totality of the circumstances" to determine if there is an objectively reasonable apprehension. *Id.* For example, actual controversy requires more than an adversely held patent, *BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975,

6

978 (Fed. Cir. 1993), and license negotiations alone are not sufficient to create an actual controversy, *Phillips Plastics*, 57 F.3d at 1053. In addition, the reasonable apprehension prong of the test requires a showing of a "minium degree of adverseness" to establish a controversy. *EMC Corp.*, 89 F.3d at 811. Under this part of the analysis, the defendant's conduct must show a desire to enforce its patent.

In *Arrowhead, supra,* the court found that a reasonable apprehension may exist in the absence of any express intent to sue for patent infringement. In that case the defendant/patent-holder sent various letters to the plaintiff's customers, notifying them of its patent and the consequences of patent infringement. 846 F.2d at 733. The defendant's attorney also sent correspondence to the plaintiff indicating that he believed plaintiffs were participating in a patented process and stating the patent-holder's desire to protect its patents. In holding that this exchange created a reasonable apprehension of suit and that jurisdiction was proper, the Federal Circuit noted that "thinly veiled threat[s]" and "patent-enforcement by letter tactics" were sufficient to create a reasonable apprehension of suit. *Id.* at 737-739.

In this case, the affidavits and exhibits in the record demonstrate that Target did, in fact, hold an adverse patent. Target also engaged in licensing negotiations with the Academy. Further, Target's letters to Academy and Maxwell indicate its desire to protect its technology. Although the letters Target sent to Maxwell and Academy in February of 2003 contained no express charge of patent infringement, they were akin to those letters sent in *Arrowhead* considered to be "thinly-veiled threats" and "patent-enforcement by letter" tactics. 846 F.2d at 737-739. Target's letters to Academy and Maxwell stated that unlicensed sale and/or manufacture of a product (the silver alloy target) covered by a Target-owned patent could subject Academy or its customers to liability for patent infringement and included copies of the patents. In light of such clear warnings, it was

7

reasonable for Academy to believe that Target might pursue legal remedies.

Target characterizes its letters as an invitation to negotiate licenses; however, Target prefaces that invitation with a notice that the recipients might be sued if they purchase technology covered by a Target-owned patent. Further, Target and Academy had been involved in licensing negotiations for years. The negotiations never bore fruit, and their correspondence reflects an escalating discord between the parties. Considering the affidavits of the parties and resolving any inconsistencies in favor of Academy, the Court finds that, under the totality of the circumstances, Academy had a reasonable apprehension that Target would initiate a patent infringement lawsuit against it if Academy did not halt its allegedly infringing activities. Accordingly, the requisite "actual controversy" requirement is met, and subject matter jurisdiction under the Declaratory Judgment Act exists.

## II.  PERSONAL JURISDICTION

### A.  Factors Considered In Determining the Existence of Personal Jurisdiction

In determining whether personal jurisdiction exists over an out-of-state, nonresident defendant, the New Mexico[1] courts employ a three-step test. *Rogers v. 5-Star Mgmt.*, 946 F. Supp.

---

[1] The Federal Circuit has held that it is the law of the Federal Circuit rather than that of the local district court or of the state in which it sits that applies to jurisdictional questions in patent cases, "because the jurisdictional question is 'intimately involved with the substance of the patent laws.'" *Inamed Corp. v. Kuzmak,*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)(quoting *Akro Corp. v. Luker,* 45 F.3d 1541,1543 (Fed. Cir. 1995)). Under the Federal Circuit jurisprudence, whether personal jurisdiction exists over an out-of-state defendant depends on two factors: (1) whether the forum state's long arm statute permits service of process; and (2) whether asserting personal jurisdiction would violate due process. *Inamed*, 249 F.3d at 1359; *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269-1270; *Akro*, 45 F.3d at 1544; *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d at 1458. *Akro* enumerated the following factors to be considered when determining whether the exercise of personal jurisdiction comports with due process: (1) whether the defendant purposefully directed his activities at residents of the forum; (2) whether the claim arises from the activities with the forum state; and (3) whether asserting jurisdiction would be reasonable and fair. 249 F.3d at 1545 (citing *Burger King,* 471 U.S. at 471-476). Each of these requirements comprises part of the due process analysis required under *Burger King* and

907, 910 (D.N.M. 1996)(Black, J.)(citing *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)).  The first inquiry is whether the defendant's actions fall under one of the enumerated acts in the New Mexico long arm statute.[2] *Rogers,* 946 F. Supp. at 946.  In this instance, the alleged enumerated act is Target's transaction of business in New Mexico.  Second, the plaintiff's cause of action must "arise from" the act enumerated under the long arm statute. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).  Third, service of process over the out-of-state defendant must satisfy due process under the Fourteenth Amendment.  *Id.*

With regard to the first prong, New Mexico courts will extend the long arm statute as far as constitutionally permissible.  *Martin,* 914 F. Supp. at 476.   It is therefore unnecessary to consider whether the defendant transacted business in any technical sense. *Id.* at 477; *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994)(quoting *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, (1978))("'the usual two-step analysis collapses into a single search for the outer limits of what due process permits'")(emphasis in original). *Cf. Pelton v. Methodist Hosp.*, 989 F.Supp. 1392, 1394 (D.N.M. 1997) (Parker, J.)("three factors...determin[e] whether certain conduct constitutes transacting business under the long arm statute").  Thus, the portion of the test is coextensive with the requirements of due process, and the Court looks to whether Target's

---

*International Shoe.*  Thus, the Federal Circuit requirements are identical to those of the United States Supreme Court and the New Mexico state courts.  As such, both the analysis and the result remain the same, regardless of whether the Court applies Federal Circuit authority or the New Mexico caselaw.

[2] N.M.S.A. 1978, § 38-1-16(A)(1) states in pertinent part:
> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>> (1) the transaction of business within the state.

affirmative acts demonstrate that it purposefully availed itself of the privilege of doing business in New Mexico—a requirement discussed in further detail below.

New Mexico courts interpret the second requirement—that the defendant's conduct "arise from" its activities within the forum—on a case by case basis. *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 472, 493 P.2d 954, 957 (1972). To meet the requirement, there must be a "close relationship" between the cause of action and the transaction of business. *Id. See also Visarraga v. Gates Rubber Co.,* 104 N.M. 143, 146-147, 717 P.2d 596, 599-600 (Ct. App. 1986), *cert. quashed sub nom, Visarraga v. Littlejohn's Equip. Co.,* 104 N.M. 137, 717 P.2d 590 (1986).

The constitutional test for the third prong, satisfaction of due process, requires that the nonresident defendant must have "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). One factor the courts consider is whether a defendant could "reasonably anticipate being haled into court" in the forum state. *Burger King,* 471 U.S. at 472. (citations omitted). Additionally, the defendant's contacts with the forum should be such that asserting jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[3]

To satisfy these due process requirements, the defendant's actions should show that it "purposefully availed itself" of the privilege of conducting activities in the forum state and not as a

---

[3]In considering whether maintenance of the suit will offend notions of fair play and substantial justice, the court may consider a variety of factors including the burden on the defendant, the state's interest in resolving the dispute, the plaintiff's interest in convenient and efficient relief, the plaintiff's power to choose the forum, the interstate judicial system's interest in efficient resolution of controversies and shared interests of the states in furthering substantive social policies. *World-Wide Volkswagen,* 444 U.S. at 286 (internal quotes and citations omitted).

result of "'random, fortuitous, or attenuated contacts." *Id.* (citations omitted).  Purposeful availment analysis turns on whether the defendant's contacts are attributable to its own actions by way of affirmative contacts with the forum state. *Rambo v. Amer. S. Ins. Co.*, 839 F.2d 1415, 1419-1420 (10th Cir. 1988).  More is required to establish purposeful availment than the defendant's responses to the unilateral acts of the plaintiff.  *Id.* at 1420.

In *Burger King, supra,* the Supreme Court recognized the significance of a defendant directing his activities toward a forum.  In that case, the defendants were Burger King franchisees with a place of business in Michigan. 471 U.S. at 466.  Plaintiff was a Florida-based franchisor. *Id.* at 464.  The parties entered into a franchise agreement regarding the defendants' Burger King restaurant in Michigan. *Id.*  The defendants failed to make payments under the agreement, and the plaintiff sued them in Florida. *Id.*  Defendants' contacts with the forum included telephone and mail communications and attendance at management courses in Miami. *Id.* at 466. Additionally, the defendant franchisors had mailed their franchise payments to the plaintiff's Florida offices. *Id.*  In finding that defendants had sufficient contacts with Florida and upholding personal jurisdiction, the United State Supreme Court noted  the interest of a forum state in providing its residents with  a convenient forum to "redress[] injuries inflicted by out-of-state actors," *id.* at 474 (citations omitted), especially "where individuals 'purposefully derive benefit' from their interstate activities." *Id.* at 474-475 (citing *Kulko v. California Superior Court*, 436 U.S. 84, 96 (1978).

Similarly, in *Inamed,* also discussed in footnote 1, *supra*, the Federal Circuit found that the due process requirement had been met.  249 F.3d 1356, 1360.  In that case, the defendant held patents relating to devices and methods of treating obesity, *id.* at 1358, and at all times was a resident of New Jersey. *Id.*  The Plaintiffs were license holders of defendant's patents. *Id.* at 1359.  Plaintiffs

11

unsuccessfully attempted to renegotiate the patents. *Id.* Defendant then forwarded letters of infringement. *Id.* Shortly thereafter, the plaintiffs filed a declaratory action. *Id.* Defendant challenged jurisdiction on the basis that he never entered the forum except for one "'get acquainted'" session and that all negotiations were conducted by phone and mail. *Id.* at 1361. The Federal Circuit disagreed, however, and found that this created sufficient minimum contacts to subject the defendant to personal jurisdiction in California. *Id.* at 1361-1362 (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992) (upholding jurisdiction where defendant's contacts were entirely conducted via telephone or mail).

### B. Target's Contacts With New Mexico

In the present case, the record reflects that the relationship between Academy and Target began in 1998 when Mr. Nee approached an Academy representative at a convention[4] and inquired whether Academy would be able to manufacture the alloy sputtering targets. Target characterizes the interactions that followed as its responses to Academy's unilateral acts, but the record reflects a different scenario. The parties corresponded frequently via ground-mail and email. The evidence demonstrates that Target and Academy engaged in negotiations for a licensing agreement, and communications between the parties spanned from 1998 until 2003. Target and Academy exchanged drafts of a licensing agreement with the goal of finalizing a contract. Target asked Academy to produce sixteen sputtering targets, and significantly Target actually purchased five of those targets for its own use (Maxwell purchased the remaining eleven targets pursuant to an agreement between Target and Academy). That Target purchased the five targets from Academy during the course of

---

[4]Neither party has indicated where the convention took place, which might have been helpful to the Court's analysis.

negotiating the licensing agreement is irrelevant; the purchases themselves constituted the transaction of business in New Mexico.  Further, Mr. Nee visited the Academy plant in Albuquerque on behalf of Target with a Japanese client to show Academy's production facility.  All of the foregoing contacts are enough, under *Burger King*, *Inamed*, and other cases, to subject Target to personal jurisdiction in this forum.

Furthermore, these interactions were not the result of Academy's unilateral acts; rather, each party spent significant time and effort to cultivate their business relationship during a period of over three years.  The record reflects that Target's contacts with New Mexico were far from "random, fortuitous, or attenuated," but rather that Target purposely availed itself of the privilege of doing business in New Mexico with a New Mexico company.  The evidence establishes the minimum contacts requirement set out by *International Shoe* and its progeny.

Target argues that this case does not meet the "arise from" requirement set out in the New Mexico long arm statute and *Burger King*.  Again, the Court disagrees.  Target urges the Court to apply a rigid definition of "arise from."  Under Target's logic, it could only meet this requirement if the cause of action arose specifically from its purchases of sputtering Targets from Academy. Target cites *Helicopteros Nacionales de Columbia, S.A. v. Hall* for support.  466 U.S. 408 (1994) ("mere purchases, even if occurring at regular intervals are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). However, *Helicopteros* is inapposite to the present case.  That case involved a third-party attempting to bring a wrongful death action against a Columbian helicopter manufacturer in the U.S. for damages resulting from a helicopter crash in Peru.  The Plaintiff was not involved in any way in the purchase of the helicopters but rather was seeking damages on behalf of the decedents.

13

The Plaintiffs were therefore using the Defendant's contacts with another party to obtain jurisdiction. That is not the case here.

In this case, Target relied on Academy to produce sputtering targets in accordance with its patents. In turn, Target expressed concern about the use (or misuse) of the information protected by those patents. Academy brought the declaratory action to clarify the status of those patents. The declaratory action, therefore, arises from the existence of the patents and the business that Target transacted with Academy in New Mexico.

Finally, the assertion of personal jurisdiction must not offend fair play and substantial justice. Target points to no evidence that it would be unduly burdened by maintenance of the suit in New Mexico. In addition, the District of New Mexico has an interest in resolving a patent dispute involving a New Mexico corporation, and Academy has an interest in obtaining convenient relief in this state.

Satisfied that both the New Mexico long arm requirements and the due process standards have been met, the Court finds that Target is subject to personal jurisdiction in New Mexico.

## III.    ALLEGATION OF INEQUITABLE CONDUCT

Target moves to strike Academy's allegations of "inequitable conduct"[5] on the grounds that the charge lacks the requisite particularity under the Rule 9(b).[6] For the reasons below, this Court grants Defendant's motion to strike the language. However, leave is granted for Academy to amend

---

[5] Academy's complaint alleges that "[u]pon information and belief, the Target Patents are unenforceable for inequitable conduct before the United States Patent and Trademark Office, unclean hands, and/or patent misuse." Complaint, at ¶ 20.

[6] Rule 9(b) refers to pleading fraud, mistake or condition of the mind. The rule states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

14

its complaint to conform with the specificity requirements of Rule 9(b).

Inequitable conduct was formerly referred to as "fraud on the patent office." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988). In *Burlington,* the Federal Circuit voiced its concerns with attorneys' misuse, and overuse of the charge of inequitable conduct. *Id.* Additionally, the court noted a heightened burden of proof, indicating that a party can prevail on the claim only if it offers clear and convincing evidence. *Id.* Although this Court has found no Federal Circuit or Tenth Circuit authority addressing whether Rule 9(b) applies to allegations or affirmative defense of inequitable conduct, several district courts have held that it does. *See, e.g., Laitram Corp. v. OKI Elec. Indus. Co.*, WL 43823, 30 U.S.P.Q.2d 1527, *3 (E.D. La. 1994); *Chiron v. Abbott Laboratories*, 156 F.R.D. 219, 221-222 (N.D. Ca. 1994). The Court finds particularly persuasive the holding of our sister district in *Great Plains Laboratory, Inc. v. Metametrix Clinical Lab.*, 2004 WL 2491653 (D. Kan. 2004), in which the court stated that "the affirmative defense of inequitable conduct before the Patent and Trademark office must be pleaded with particularity required under Fed. R.Civ.P. 9(b)". Accordingly, Rule 9(b) applies to a charge of inequitable conduct.

Because Academy has failed to plead with particularity the circumstances constituting the alleged fraud as required by Rule 9(b), Target's motion to strike the language should be granted. Further, the proposed supplemental Complaint attached to Plaintiff's motion under Rule 15(d) (discussed below) fails to cure this defect. The Court grants Academy leave to amend its complaint as requested in its response brief to the Motion to Dismiss. In the event that Academy wishes to amend its complaint in accordance with Rule 9(b), it must do so within ten days of the entry of this Memorandum Opinion and Order.

15

## IV.     MOTION TO SUPPLEMENT COMPLAINT

Finally, the Court considers Academy's Motion to Supplement the Complaint under Rule 15(d)[7] to include a claim relating to an additional patent (the '503 patent) owned by Defendant Target. For the reasons below, the motion will be granted.

Under Rule 15(d), a supplemental complaint may include information or events that have occurred since the date of the original complaint. Fed. R. Civ. P. 15(d). The court has broad discretion in whether to permit or deny leave to supplement. *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989); *Reid v. International Union, UAW, Dist. Lodge 1093*, 479 F.2d 517, 520 (10th Cir.). *cert. denied*, 414 U.S. 1076 (1973). As with the amendment of a complaint under Rule 15(a), leave to supplement a complaint should be freely granted unless there is good reason to deny leave. *Gillihan,* 872 F.2d at 941; *Families & Youth, Inc. v. Maruca*, 156 F.Supp.2d 1245, 1249 (D.N.M. 2001). Reasons to deny leave include prejudice, *id.,* and undue or further delay of the action. *See Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Courts have applied the same factors considered in a Rule 15(a) analysis to the analysis of a Rule 15(d) motion. *Glatt*, 87 F.3d at 194.

Academy likens the Rule 15(d) analysis to that which would apply under Rule 15(a). Citing *Foman v. Davis*, 371 U.S. 178 (1962), Academy contends that there are four factors to consider when determining whether or not to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. Academy further argues that of these factors,

---

[7] Rule 15(d) provides: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement for a relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor."

the most important are prejudice and delay. Academy attests that it does not seek to supplement for these reasons. Target has failed to rebut this charge and has not demonstrated that it will be burdened by the supplementation. Rather, Target argues that the Court lacks subject matter jurisdiction over the new claim.

In support of its argument, Target cites *GAF Building Materials Corp. v. Elk Corp. of Dallas* for the proposition that Academy may not seek a declaratory judgment on a patent issued after the original complaint. 90 F.3d 479, 482-483 (Fed. Cir. 1996). However, in *GAF Building Materials* the plaintiff sought declaratory relief regarding a patent that had not yet issued at the time it filed its complaint. The Federal Circuit Court of Appeals found that the district court had lacked jurisdiction at the time the case was filed, reasoning that a dispute over a possible *future* patent did not present a justiciable case or controversy. *Id.* at 482. The plaintiff sought to cure this defect by supplementing its complaint after the patent issued. However, the court held that a supplemental complaint could not convey jurisdiction that was lacking at the time of the original complaint. *Id.* at 482-83.

*GAF Building Materials* is distinguishable from this case. Here, the Court has concluded that it has subject matter jurisdiction over the claims in the original complaint. Academy did not include the '503 patent in the original complaint, but now that the patent has been issued, Academy seeks to supplement under Rule 15(d). The Court finds that *GAF Building Materials* does not apply on these facts. Further, leave to amend should be freely granted in the absence of a valid reason to deny. Target has failed to demonstrate that it will be prejudiced by the supplementation. Therefore, Academy may supplement the complaint under Rule 15(d) to include the '503 patent, and must do so within ten days of the entry of this Memorandum Opinion and Order.

In accordance with the foregoing, **IT IS THEREFORE ORDERED** that:

17

(1)     *Defendant's Motion to Dismiss for Want of Personal or Subject Matter Jurisdiction* [Doc. No. 7] is **DENIED**;

(2)     *Defendant's Alternative Motion to Strike Offensive Language from the Plaintiff's Complaint* [Doc. No. 7] is **GRANTED**; however, Academy has leave of Court to amend its Complaint within ten days in accordance with the specificity requirements of Rule 9(b); and

(3)     *Plaintiff's Motion to Supplement Complaint Under Rule 15(d)* [Doc. No. 15] is hereby **GRANTED**, and Academy has leave to supplement its complaint within ten days as explained herein.

_____
**UNITED STATES DISTRICT JUDGE**